Hovhannes Bayburtski
CA Bar No. 348506
Vichi Law, PC
12400 Ventura Blvd, #411
Studio City, CA 91604
Telephone:(310)901-9112
Email: hovbaylaw@gmail.com; globallawusa@gmail.com
Attorney for Petitioner

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jing ZHAO,<br>Petitioner,<br>v.<br>James JANECHA, the Warden of the Adelanto ICE Processing Center;<br><br>Jaime RIOS, Field Office Director, Adelanto, Office of Detention and Removal, U.S. Immigrations and Customs Enforcement, U.S. Department of Homeland Security;<br><br>Todd M. LYONS, Acting Director, Immigration and Customs Enforcement, U. S. Department of Homeland Security;<br><br>Markwayne MULLIN, in the Official Capacity, Secretary, U.S. Department of Homeland Security; and<br><br>Todd BLANCHE, in the Official Capacity, Attorney General of the United States.<br>Respondents | NO.<br><br>**PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Challenge to Unlawful Incarceration Under Color of Immigration Detention Statutes;<br><br>Request for Declaratory and Injunctive Relief<br><br>**IMMEDIATE RELEASE REQUESTED** |

## I. INTRODUCTION

1. Petitioner Jing Zhao is a national of the People's Republic of China who has lived in the United States openly, lawfully, and productively for years, and who has done everything our laws ask of asylum seekers. She first came to the United States as a student in 2013 and earned two master's degrees here. She was most recently inspected and lawfully admitted on an F-1 student visa in or about September 2017. Within one year of that arrival, she filed an affirmative application for asylum with U.S. Citizenship and Immigration Services. That application has been pending ever since. On the strength of it, USCIS granted her employment authorization, and she has worked lawfully, lived at a known address, and maintained a spotless record. She has no criminal history of any kind.

2. On October 3, 2026, Petitioner took a domestic flight within the United States. When she arrived at Los Angeles International Airport, ICE officers arrested her. She was given no notice. She was given no hearing. No neutral decision-maker of any kind reviewed the decision to take away her liberty before it was taken. She has been confined at the Adelanto ICE Processing Center ever since.

3. Petitioner was arrested in the interior of the United States, after a domestic flight, nine years after her last admission. She never departed the United States and never presented herself at any border or port of entry seeking admission. She is therefore not an "arriving alien" or an applicant for admission under 8 U.S.C. § 1225. She is a lawfully admitted noncitizen, she is not subject to mandatory detention, and her detention is discretionary under 8 U.S.C. § 1226(a). A discretionary decision by the enforcing agency to seize a person who has lived peaceably in the community for years—while her asylum application is pending and while she holds a federal grant

of employment authorization—is precisely the kind of executive action the Due Process Clause was written to constrain.

4. "[A]bsent the necessity of quick action by the [Government] or the impracticality of providing any pre-deprivation process, a post-deprivation hearing would be constitutionally inadequate." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982) (citation and quotation marks omitted). Nothing about this arrest required quick action or made pre-deprivation process impracticable. For nine years the Government has known exactly who Petitioner is and exactly where she lives: she gave her address to USCIS on her asylum application, and USCIS used it to issue her employment authorization. Respondents had every opportunity to give Petitioner notice and an opportunity to be heard before seizing her. They gave her neither.

5. Even if Respondents later provide a custody hearing, it will not cure the violation, and this Court should not order one. As the Central District has held on this precise question, "[a] post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing," and "the appropriate remedy for the deprivation is release from custody." *Mikayelyan v. Giles*, No. 5:26-cv-01035-SSS-DFM, Dkt. No. 19, at 3–4 (C.D. Cal. May 20, 2026); *Zaitsev v. Warden, Adelanto*, 2026 WL 1047942, at *7 (C.D. Cal. Apr. 15, 2026). Such a hearing "cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."* E.A.T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025).

6. Petitioner does not ask this Court to order a bond hearing, and she does not consent to a bond hearing as a substitute for release. An after-the-fact bond hearing is not a sufficient remedy: it would arrive only after the unlawful deprivation has already occurred, it would place on Petitioner the burden of buying back a liberty that was never lawfully taken, and it would leave

untouched the practice of seizing long-settled asylum applicants without any prior process. Petitioner asks this Court to issue the writ and order her immediate release on reasonable conditions of supervision, and to bar Respondents from re-detaining her absent notice and a constitutionally adequate pre-deprivation hearing before a neutral adjudicator.

## II. JURISDICTION

7. This Court has subject-matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus); U.S. Const. art. I, § 9, cl. 2 (the Suspension Clause); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1651 (the All Writs Act); and 28 U.S.C. §§ 2201–2202 (Declaratory Judgment Act). Petitioner is "in custody under or by color of the authority of the United States" and "in custody in violation of the Constitution or laws … of the United States." 28 U.S.C. § 2241(c)(1), (c)(3).

8. Federal courts retain jurisdiction under § 2241 to review the constitutionality of immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *INS v. St. Cyr*, 533 U.S. 289, 305 (2001). This Petition challenges only the lawfulness of Petitioner's custody. It does not challenge a final order of removal—none exists. To Petitioner's knowledge, no Notice to Appear has yet been filed with the Immigration Court, and no removal hearing has been scheduled. The jurisdiction-channeling provisions of 8 U.S.C. § 1252 therefore do not bar this action. *See Jennings v. Rodriguez*, 583 U.S. 281, 294–95 (2018).

9. The Court is directed to grant the writ or issue an order to show cause "forthwith," 28 U.S.C. § 2243, and to give habeas petitions "special, preferential consideration to ensure expeditious hearing and determination." *Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

**III. VENUE**

10. Venue is proper in this district. A habeas petition challenging present physical confinement must be filed in the district of confinement and name the petitioner's immediate custodian. *Rumsfeld v. Padilla*, 542 U.S. 426, 442–47 (2004). Petitioner is detained at the Adelanto ICE Processing Center in San Bernardino County, which lies within the Central District of California. (Ex. 1.) 28 U.S.C. §§ 84(c), 2241(a).

**IV. PARTIES**

11. Petitioner Jing Zhao is a native and citizen of the People's Republic of China. She is detained at the Adelanto ICE Processing Center, 10400 Rancho Road, Adelanto, CA 92301, under A# 216-187-501. (Ex. 1.)

12. Respondent James Janecha is the Warden of the Adelanto ICE Processing Center and is Petitioner's immediate custodian, with day-to-day control over the facility where she is confined. *Padilla*, 542 U.S. at 435.

13. Respondent Jaime Rios is the Field Office Director of the ICE Los Angeles Field Office, Enforcement and Removal Operations, and is the ICE official with authority over Petitioner's detention and custody determinations. He is sued in his official capacity.

14. Respondent Todd M. Lyons is the Acting Director of U.S. Immigration and Customs Enforcement and is sued in his official capacity.

15. Respondent Markwayne Mullin is the Secretary of Homeland Security and is sued in his official capacity. DHS encompasses ICE and is charged with administering and enforcing the immigration laws. *See* 8 U.S.C. § 1103(a).

16. Respondent Todd Blanche is the Attorney General of the United States and is sued in his official capacity. The Attorney General has authority over the immigration courts and the Board of Immigration Appeals through the Executive Office for Immigration Review.

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

17. No statutory exhaustion requirement applies to a § 2241 petition challenging the constitutionality of immigration detention, and judicially created exhaustion is prudential, not jurisdictional. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Exhaustion may be excused where administrative remedies are inadequate or not efficacious, pursuit would be futile, irreparable injury will result, or the proceedings would be void. *Id.* (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

18. Those conditions are met. The constitutional injury Petitioner alleges—deprivation of liberty without pre-deprivation process—is one the immigration courts have no jurisdiction to adjudicate and no power to remedy. An Immigration Judge cannot undo a completed constitutional violation or order release as a remedy for the denial of pre-deprivation process; the only relief the agency can offer is a custody redetermination—that is, more of the after-the-fact process that the case law holds insufficient to cure the injury. *See Zaitsev*, 2026 WL 1047942, at *7;* Zepeda Perez v. Santacruz*, 2026 WL 980492, at* 5 (C.D. Cal. Apr. 9, 2026). Requiring exhaustion would also be futile and would compound the irreparable harm of each additional day of unlawful custody.

## VI. STATEMENT OF FACTS

### A. Lawful Admission, Years of Lawful Residence, and a Long-Pending Asylum Application.

19. Petitioner is a native and citizen of the People's Republic of China. (Ex. 2 ¶ 2.)

20. Petitioner first came to the United States as a student in 2013 and completed two master's degrees. (Ex. 2 ¶ 2.) In or about September 2017, she was inspected and lawfully admitted to the United States on a valid F-1 student visa. She did not enter without inspection. (*Id.*)

21. At the end of 2017, within one year of her last arrival, Petitioner timely filed an affirmative application for asylum (Form I-589) with USCIS. (Ex. 2 ¶ 3.) That application has remained pending for approximately nine years, through no fault of Petitioner's, and remains pending today.

22. On the basis of her pending asylum application, USCIS granted Petitioner employment authorization, *see* 8 C.F.R. § 274a.12(c)(8), and she obtained a Social Security number. (Ex. 2 ¶ 4.) She has since lived openly at an address known to the Government, worked lawfully, established community ties, and maintained a spotless record with no criminal history whatsoever. (*Id.*) She has never before been detained.

**B. Petitioner Was Arrested at an Airport After a Domestic Flight—Without Any Notice or Hearing.**

23. On October 3, 2026, Petitioner traveled on a domestic flight within the United States. She did not depart the United States, did not travel internationally, and did not present at any border or port of entry seeking admission. (Ex. 2 ¶ 5.)

24. Upon her arrival at Los Angeles International Airport ICE officers arrested her—without a judicial warrant, without any prior notice, and without a hearing. (Ex. 2 ¶ 6.) No judge, no magistrate, and no Immigration Judge—no neutral decision-maker of any kind—reviewed the decision to deprive her of her liberty before it was taken.

25. Because Petitioner was lawfully admitted in 2017, has remained continuously within the United States since then, and was arrested in the interior of the United States after a purely domestic flight, she is not an "arriving alien" or an applicant for admission subject to 8 U.S.C. § 1225. She is not subject to mandatory detention. Her detention is discretionary under 8 U.S.C. § 1226(a).

26. Petitioner was transported to and delivered at the Adelanto ICE Processing Center, 10400 Rancho Road, Adelanto, California, where she has remained in continuous custody since October 3, 2026. (Ex. 1; Ex. 2 ¶ 7.)

27. There was no emergency, no exigency, and no risk of flight that pre-deprivation notice would have created and that the Government could not have managed. Petitioner has been in the United States for years; she disclosed her identity and address to USCIS when she applied for asylum; USCIS adjudicated her requests for employment authorization at that address; and she has a Social Security number and a lawful employment history. Respondents could have served her with notice and afforded her a hearing at any time over the past nine years. Providing notice and a hearing before any arrest was entirely practicable. Respondents simply did not do it.

28. Petitioner's nine-year record of living openly at a known address, working lawfully, and waiting patiently for the Government to adjudicate her asylum application is powerful evidence that she is not a flight risk. The Government cannot credibly assert that a person who has remained in plain view of the immigration agencies for nearly a decade must now be jailed to secure her appearance.

**C. Petitioner Has No Final Order of Removal and Is Suffering Ongoing Harm in Detention.**

29. No final order of removal exists against Petitioner. Her affirmative asylum application remains pending with USCIS. To Petitioner's knowledge, she has not been served with a Notice to Appear, and no hearing has been scheduled before the Immigration Court.

30. Petitioner intends to continue to follow every rule and to continue pursuing her immigration case. (Ex. 2 ¶ 9.) She asks to be released so that she can continue her asylum application together with her husband. (Ex. 2 ¶ 10.)

31. Petitioner's confinement is causing her ongoing harm. She suffers from depression, feels sad and depressed in detention, and sleeps very poorly. (Ex. 2 ¶ 8.) Each additional day of detention compounds that harm.

## VII. LEGAL ARGUMENT

**A. Petitioner Holds a Protected Liberty Interest, and Due Process Required Notice and a Hearing Before Respondents Seized Her.**

32. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690; *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). That protection runs to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *accord Mathews v. Diaz*, 426 U.S. 67, 77 (1976); *Demore*, 538 U.S. at 523.

33. The Government's discretion to detain noncitizens "is always constrained by the requirements of due process." *Hernandez*, 872 F.3d at 981. Because Petitioner is a § 1226(a)

detainee and not subject to mandatory detention, no statute compelled her seizure. Respondents' decision to take her into custody was a pure exercise of executive discretion over a person living at liberty in the community—and is therefore subject to the full requirements of the Due Process Clause, including its requirement of pre-deprivation process.

34. A noncitizen living at liberty in the United States has a due-process interest in "an opportunity or a hearing *before* [s]he is deprived of any significant protected interest." *R.A.N.O. v. Wofford*, 2026 WL 40507, at *7 (E.D. Cal. Jan. 6, 2026) (emphasis in original);* see also E-M v. Hermosillo*, 2026 WL 883776, at* 6 (D. Or. Mar. 31, 2026); *Singh v. Noem*, 2026 WL 766228, at *9 (D.N.M. Mar. 18, 2026). The rule that process must precede deprivation is the constitutional default.* Logan*, 455 U.S. at 436. Post-deprivation process suffices only in "extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event."* United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993) (citation omitted). This is not such a case. The Government has known where to find Petitioner for nine years.

35. Nor did any ICE administrative warrant supply the missing process. "A neutral judge is one of the most basic due process protections." *Castro-Cortez v. INS*, 239 F.3d 1037, 1049 (9th Cir. 2001). A warrant the enforcing agency writes for itself is the opposite of neutral review. *See Diouf v. Napolitano*, 634 F.3d 1081, 1091–92 (9th Cir. 2011) (risk of erroneous deprivation is reduced where a neutral decision-maker, rather than ICE alone, makes custody determinations).

**B. Every Mathews Factor Confirms That Pre-Deprivation Process Was Required.**

36. What process is due is determined by *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976): the private interest affected; the risk of erroneous deprivation and the value of additional safeguards; and the Government's interest. *See generally Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022). Each factor favors Petitioner.

37. *First*, the private interest is at its maximum. Petitioner's interest in freedom from physical detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Liberty permits her to live with her husband, to continue the lawful employment the Government authorized, to prosecute her asylum claim, and to "form the other enduring attachments of normal life." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Her interest is heightened by the years she has built a settled life here in reliance on the Government's grant of employment authorization.

38. *Second*, the risk of erroneous deprivation from a unilateral ICE arrest reviewed by no one is high, and pre-deprivation safeguards "would greatly reduce the risk" of an erroneous deprivation of liberty. *Singh*, 2026 WL 766228, at *9. Had Petitioner been heard before her seizure, she could have presented her lawful admission, her timely and long-pending asylum application, her employment authorization, her years of lawful work at a known address, and her spotless record, demonstrating that she is neither a danger nor a flight risk.

39. *Third*, the Government's interest in seizing Petitioner without any prior process is low. Civil immigration detention is not punitive; the only legitimate interests are preventing danger and securing appearance. *Zadvydas*, 533 U.S. at 690. Petitioner presents neither concern—she has no criminal history and every incentive to appear, as her nine years of compliance prove. "[A]lthough the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is 'low.'" *R.A.N.O.*, 2026 WL 40507, at *7 (quoting* Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)). The burden of providing notice and a hearing is minimal—the Government runs custody hearings every day—while "[t]he costs to the public of immigration detention are 'staggering.'"* Hernandez*, 872 F.3d at*

*996. This is not the "special instance … where post-deprivation process is all that is due."* Zinermon v. Burch*, 494 U.S. 113, 139 (1990).

**C. An After-the-Fact Bond Hearing Is Not a Sufficient Remedy, and the Court Should Not Order One.**

40. Respondents may argue that Petitioner can seek a bond hearing before an Immigration Judge. That is no answer. "[A] post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing." *Zaitsev*, 2026 WL 1047942, at *7;* accord Zepeda Perez*, 2026 WL 980492, at* 5; *E.G.M. v. Scott*, 2026 WL 914803, at *6 (W.D. Wash. Apr. 3, 2026) ("any post-deprivation remedies … do not cure the constitutional violation"). In* Mikayelyan*, the Central District confronted this argument directly and, even though the petitioner had already received a bond hearing at which the Immigration Judge denied bond, granted the writ and ordered release, holding "the appropriate remedy for the deprivation is release from custody." Dkt. No. 19, at 4;* accord Singh*, 2026 WL 766228, at* 10.

41. The reason is structural: the injury *is* the detention. Even if Petitioner were given a flawless hearing tomorrow and released, she "will have already suffered the harm … [of her] potentially erroneous detention." *Domingo v. Kaiser*, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) (alterations added). A bond hearing held after the seizure "cannot prevent an erroneous deprivation of liberty" because the deprivation has already happened.* E.A.T.-B.*, 795 F. Supp. 3d at 1324. Ordering a do-over hearing would ratify the very sequence the Constitution forbids—seize first, justify later.

42. A bond hearing would also convert Respondents' constitutional violation into Petitioner's financial burden. At a § 1226(a) bond hearing, the Immigration Judge may condition release on payment of a monetary bond. Petitioner would thus be required to pay for the return of a

liberty that Respondents never lawfully took—an added restraint the pre-arrest status quo did not impose—while Respondents would remain free to repeat the same practice against the next long-pending asylum applicant who boards a domestic flight. Petitioner therefore does not seek, and does not consent to, an order directing a bond hearing in lieu of release.

**D. The Only Adequate Remedy Is Immediate Release.**

43. “[T]he traditional function of the writ is to secure release from illegal custody.” *Preiser*, 411 U.S. at 484. Where the Government has detained a person without the pre-deprivation process the Constitution requires, “the appropriate remedy for the deprivation is release from custody.” *Mikayelyan*, Dkt. No. 19, at 4. Courts in this District have ordered release on comparable facts, recognizing that the deprivation of physical liberty is itself irreparable harm. *See, e.g., Jin Liu v. Noem*, No. 5:26-cv-00325-CAS-DTB (C.D. Cal. Jan. 30, 2026); *Tur-Sarksyan v. Bondi*, No. EDCV 26-00696-MWF (C.D. Cal. Feb. 23, 2026). The appropriate order here is release, restoring Petitioner to the status quo that existed before Respondents seized her, without new restraints that no neutral adjudicator has found necessary.

## VIII. CLAIMS FOR RELIEF

### COUNT ONE

### Violation of Procedural Due Process—Detention Without Pre-Deprivation Notice and Hearing

### (U.S. Const. amend. V)

44. Petitioner re-alleges and incorporates by reference each preceding paragraph.

45. Petitioner held a constitutionally protected liberty interest in remaining free from physical confinement. Respondents deprived her of that interest on October 3, 2026 without notice, without a hearing, and without review by any neutral decision-maker.

46. No exigency, emergency, or impracticability excused pre-deprivation process. Petitioner was a lawfully admitted noncitizen with a long-pending asylum application and federal employment authorization who had lived at an address known to the Government for years; notice and a hearing before any arrest were entirely practicable. The violation was complete upon her detention and cannot be cured by a later bond hearing. The Court should grant the writ and order Petitioner's immediate release.

**COUNT TWO**

**Violation of Substantive Due Process—Detention Untethered to Any Permissible Purpose**

**(U.S. Const. amend. V)**

47. Petitioner re-alleges and incorporates by reference each preceding paragraph.

48. Civil immigration detention may serve only two permissible purposes: preventing danger to the community and securing the noncitizen's appearance at removal proceedings. *Zadvydas*, 533 U.S. at 690. It may not be punitive.

49. Petitioner has no criminal history and has been found by no adjudicator to be dangerous. She entered lawfully, timely applied for asylum, has held employment authorization, and has lived openly in the United States for years—giving her the strongest possible incentive, and a demonstrated record, of appearing. Her detention is therefore not reasonably related to any legitimate purpose and violates substantive due process. The Court should grant the writ, order her immediate release, and enjoin Respondents from re-detaining her absent constitutionally adequate pre-deprivation process.

**IX. PRAYER FOR RELIEF**

WHEREFORE, Petitioner Jing Zhao respectfully requests that this Court:

(1) Assume jurisdiction over this matter;

(2) Declare that Petitioner's detention—effected on October 3, 2026 without notice and without a hearing before a neutral adjudicator prior to the deprivation of her liberty—is unlawful and violates the Due Process Clause of the Fifth Amendment;

(3) Declare that any post-deprivation bond hearing did not and cannot cure that violation;

(4) Issue a Writ of Habeas Corpus and ORDER Respondents to release Petitioner from custody IMMEDIATELY, on reasonable conditions of supervision, restoring the conditions of liberty that existed before her arrest and without imposing any monetary bond or other new restraint—including electronic monitoring—absent a subsequent, constitutionally adequate pre-deprivation determination that such a restraint is necessary;

(5) In the alternative, and pending final resolution of this Petition, issue an Order to Show Cause under 28 U.S.C. § 2243 requiring Respondents to show cause within three (3) days why the writ should not be granted;

(6) Order Respondents to file a status report certifying compliance with the order of release within three (3) days of its entry;

(7) Enjoin Respondents from re-detaining Petitioner absent notice and a constitutionally adequate hearing before a neutral adjudicator held prior to any such re-detention;

(8) Enjoin Respondents from transferring Petitioner outside the Central District of California pending resolution of this Petition;

(9) Award Petitioner reasonable costs and attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(10) Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: October 4, 2026

By counsel,

/s/ Hovhannes Bayburtski

Hovhannes Bayburtski, Esq.
Attorney for Petitioner

## VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I am submitting this verification on behalf of the Petitioners because I am one of Petitioners' attorneys. I have discussed with the Petitioners the events described in the Petition. Based on those discussions, I hereby verify that the factual statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Executed on October 4, 2026, in Studio City, CA.

/s/ Hovhannes Bayburtski
Hovhannes Bayburtski, Esq.
Attorney for Petitioner

## INDEX OF EXHIBITS

| | |
|---|---|
| **Exhibit 1** | ICE Online Detainee Locator search result for Jing Zhao (A# 216-187-501), printed October 4, 2026, showing current detention at Adelanto ICE Processing Center, 10400 Rancho Road, Adelanto, CA 92301 |
| **Exhibit 2** | Affidavit of Petitioner Jing Zhao in Support of Petition for Writ of Habeas Corpus, with Certificate of Interpreter |